## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MATTHEW FONTENOT, Individually and on Behalf of All Others Similarly Situated, | Case No.: 4:17-cv-03113 |
| Plaintiff, | |
| v. | **BRIEF IN OPPOSITION TO PLAINTIFF'S EXPEDITED MOTION FOR CONDITIONAL CERTIFICATION AND NOTICE TO PUTATIVE CLASS MEMBERS** |
| MCNEIL INDUSTRIAL, INC., | |
| Defendant. | |

Defendant McNeil Industrial, Inc. ("McNeil"), respectfully submits this Brief in Opposition to the Expedited Motion for Conditional Certification and Notice to Putative Class Members of Plaintiff, Matthew Fontenot ("Fontenot"). For the reasons set forth below, the Court should deny Fontenot's motion.

## INTRODUCTION

This case is not appropriate for conditional certification. Fontenot's burden at the conditional certification stage is to present evidence to support his unsupported allegations that other independent contractor welders desire to opt in to his proposed class and that he and other independent contractor welders are similarly situated. Fontenot fails to meet this burden because there are no other independent contractor welders who desire to opt-in or that are similarly situated to Fontenot. Accordingly, this Court should deny Fontenot's motion to certify the collective action and should not authorize Fontenot to transmit his proposed notice and consent form.

Fontenot's Motion should be denied for at least two reasons. First, Fontenot has not and cannot show that other independent contractor welders desire to opt in to this litigation. With

1

only two plaintiffs and no evidence that others desire to opt in, at most this case would ultimately involve only Fontenot and Zach Peterson ("Peterson"). Second, Fontenot cannot and did not show that he is similarly situated to any other independent contractor welders. McNeil, on the other hand, has provided evidence of significant variations between the independent contractor welders as a whole, making conditional certification inappropriate in this case. *See Martinez v. Cargill Meat Sols.*, 265 F.R.D. 490, 497 (D. Neb. 2009) (Kopf, J.) (stating "if a trial would require 'individualized determinations to resolve the claims of each plaintiff, certification as a collective action may be inappropriate.'"). In this case, conditional certification is inappropriate.

## FACTUAL BACKGROUND

McNeil provides full service industrial refrigeration services to clients throughout North America. *See* (Ex. 1, Declaration of Barney McNeil "McNeil Dec.", ¶ 3). These services entail bidding, designing, and engineering ammonia refrigeration systems. (*Id.*). McNeil has engaged independent contractors to perform certain welding services. (*Id.*, ¶ 4). Since McNeil designs, engineers and installs ammonia refrigeration systems, any weld of an independent contractor welder engaged by McNeil must be a code certified weld under the America Society of Mechanical Engineers, Code for Pressure Piping, B31.5 Refrigeration Piping and Heat Transfer Components Code Section. ( *Id.*, ¶ 6). Each contractor has to use his or her own identifying stamp on their welds. ( *Id.*, ¶ 7).

The independent contractor welders are engaged to perform welding services on a project by project basis. ( *Id.*, ¶ 13). These welding services are performed on projects for McNeil's clients, and therefore, the independent contractor welders' projects can and often do vary from one another. ( *Id.*, ¶ 14). Because McNeil's clients are located throughout North America, the independent contractor welders engaged by McNeil are not all providing their welding services

at the same location. (*Id.*). Due to the variances in projects and locations, independent contractor welders' hours may be different depending on the project to which they are engaged. (*Id.*, ¶ 13).

Before an independent contractor welder signs an agreement to be engaged on a particular project, many of the independent contractor welders negotiate the terms with McNeil including the duration of the project and hours per week in order for the duration and hours to be suitable to the welders' individual schedules. (*Id.*).

The independent contractor welders need their own equipment and tools in order to perform their welding services, so they incur independent expenses and invest in their own equipment and tools. (*Id.*, ¶ 9). The tools and equipment that independent contractor welders provide that are essential for any welder to perform welding services include: welding rig truck, welding lead, stinger with whip, ground clamp, torch set with gauges and a hose, oxygen-acetylene bottles, pipe beveling machine, porta-band, grinders, pipe jack stands, tripod, magnetic levels, flashlight, stub bucket, soapstone, and certain hand tools. (*Id.*, ¶ 10). In addition to the foregoing list of tools and equipment, independent contractor welders may also provide additional tools and equipment depending on the tools and equipment that are essential to the particular client's project to which they are engaged. (*Id.*). Independent contractor welders also have additional expenses independent from McNeil such as liability insurance for any damage to their welding rig or for any bodily injuries. (*Id.*, ¶ 11). As such, the level of investment of each independent contractor welder varies from welder to welder.  (*Id.*, ¶ 9-11).

Independent contractor welders offer their services through a variety of business entity structures, and not all welders businesses are structured the same. (*Id.*, ¶ 12). All of the independent contractor welders have the flexibility to work where they want and when they want, and the "how they want" is governed only by safety standards imposed on all welders and

requirements pertaining to welds with ammonia refrigeration as provided in the ASME. (*Id.*, ¶¶ 13, 6-8).

## LEGAL STANDARD

Under § 216(b) of the Fair Labor Standards Act (the "FLSA"), "a collective action may be maintained 'by any . . . employee [ ] for and in behalf of himself . . . and other employees similarly situated' to recover damages for the failure to pay minimum or overtime wages." *Morales v. Greater Omaha Packing Co.*, No. 8:08CV161, 2009 WL 1650016, at *3 (D. Neb. June 9, 2009) (quoting 29 U.S.C. § 216(b)).   With a collective action under the FLSA, "no person can become a party plaintiff and no person will be bound by or may benefit from judgment unless he [or she] has affirmatively 'opted into' the class; that is, given his [or her] written, filed consent." *Martinez*, 265 F.R.D. at 496 (quoting *Schmidt v. Fuller Brush Co.*, 527 F.2d 532, 536 (8th Cir. 1975)).

Courts in this District generally follow a two-stage process with collective actions under the FLSA. *See Martinez*, 265 F.R.D. at 496; *Morales*, 2009 WL 1650016, at *4.

> At the first stage, a class is conditionally certified on a relatively minimal showing, and then prospective plaintiffs can opt in to the action by filing consent forms. At the second stage, which almost always follows substantial discovery, plaintiffs must make a stronger showing to continue to proceed on a collective basis. If plaintiffs cannot make this stronger showing at the second stage, the conditionally certified class is decertified. Typically the second stage is triggered when the defendant moves to decertify the conditionally certified class."

*Id.*, at *4 (quoting *Parler v. KFC Corp.*, 529 F.Supp.2d 1009, 1011 (P. Minn. 2008)). It is at this first stage where the court must determine whether there are other individuals "who desire to 'opt-in' and are 'similarly situated' [to the named plaintiff] with respect to their job requirements and with regard to their pay." *Martinez*, 265 F.R.D. at 496 (quoting *Dybach v. State of Fla. Dept. of Corrections*, 942 F.2d 1562, 1567 (11th Cir. 1991).

**ARGUMENT**

Fontenot asks the Court to conditionally certify a collective action pursuant to 29 U.S.C. § 216(b) of the FLSA and issue Fontenot's proposed notice and consent form to putative collective class members. The FLSA does not require notice to putative collective class members, but rather, permits courts to facilitate notice in "appropriate cases." *See Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165, 169 (1989) (holding that "district courts have discretion, in appropriate cases, to implement 29 U.S.C. 216(b) . . . by facilitating notice to potential plaintiffs."). To determine whether a case is appropriate for conditional certification, "based on a limited record, the court must initially determine whether there are 'other [individuals] of the defendant[ ] who desire to "opt-in" and are "similarly situated" [to the named plaintiff] with respect to their job requirements and with regard to their pay provisions.'" *Martinez*, 265 F.R.D. at 496 (Kopf, J.) (quoting *Dybach*, 942 F.2d at 1567). Fontenot has not come forward with sufficient evidence indicating that this is an "appropriate case" for collective-action status. *See Parker v. Rowland Express, Inc.*, 492 F.Supp.2d 1159, 1165 (D. Minn. 2007) (finding that in the absence of evidence that individuals desired to opt in, there was no basis to "conclude that the action was an 'appropriate case' for collective-action treatment."). For the reasons set forth below, the Court should not grant conditional certification or facilitate notice.

I.     **Fontenot Has Not Shown that Other Independent Contractor Welders Desire to Opt In to This Lawsuit.**

This action is not appropriate for collective-action treatment because other than his own belief that others desire to opt-in to this lawsuit, Fontenot's submissions are void of any other evidence. *See* (Filing No. 24-3, ¶¶ 22); *Parker*, 492 F.Supp.2d at 1165 (stating "in the absence of such evidence, there would be no basis upon which the Court could conclude that the action

was an 'appropriate case' for collective-action treatment."). Fontenot cannot satisfy his burden of presenting substantial allegations that other independent contractor welders desire to opt in to this lawsuit. *See Morales*, 2009 WL 1650016, at *4 (stating that, in moving for conditional certification, plaintiff must "come forward with something more than mere averments" and the court should determine whether plaintiff "established substantial allegations").

With nothing more than Fontenot's unsupported statements about independent contractors, McNeil has provided the Court with Declarations showing other independent contractor welders do not want to join Fontenot's lawsuit. *See* (Index of Evidence; Ex. 3, Declaration of Eduardo Barajas; Ex. 4, Declaration of Dakota Johnson; Ex. 5,  Declaration of Jesse Graves; Ex. 6,  Declaration of Mauricio Cuevas; Ex. 7, Declaration of Carlos Reyes; Ex. 8, Declaration of Jose Avila; Ex. 9, Declaration of Luis Gutierrez; Ex. 10, Declaration of Armando Munoz; Ex. 11, Declaration of Gomez Thomas; Ex. 12, Declaration of Carlos Olvera; Ex. 13. Declaration of Jose Benavides; Ex. 14, Declaration of James Page; Ex. 15, Declaration of Delbert Newlon; Ex. 16, Declaration of David Weaver; Ex. 17, Declaration of Justin Mark; Ex. 18, Declaration of Briar Garrison; Ex. 19, Declaration of Jeremiah Humphrey; Ex. 20, Declaration of Justin Sutterfield; Ex. 21, Declaration of Jake Simko; Ex. 22, Declaration of McQuaid Watson; Ex. 23, Declaration of Micah Gaus; Ex. 24, Declaration of Michael Ferguson).

A.     *Fontenot's Speculation Does Not Satisfy His Burden of Showing that Others Desire to Opt In to this Lawsuit.*

Courts within and outside of this Circuit require the plaintiff to "do more than show the mere *existence* of other similarly situated persons"; rather, the "named plaintiff . . . must proffer some evidence that other similarly situated individuals desire to opt in to the litigation." *Parker*,

6

492 F.Supp.2d at 1165 (finding plaintiffs' affidavits stating they "believe that . . . many other independent contractor driver/couriers worked in excess of forty (40) hours per week and did not receive overtime compensation . . . . insufficient to satisfy Plaintiffs' burden").  *See also Butcher v. Delta Memorial Hosp.*, No. 5:12CV00241 SWW, 2013 WL 1668998, at *3-4 (E.D. Ark. Apr. 17, 2013) (stating that "plaintiffs must do more than speculate that putative opt-in plaintiffs would be interested in joining a collective action" and denying conditional certification even when all six of the named plaintiffs submitted affidavits regarding the similarly of their own claims); *Andersen v. Wells Fargo Fin., Inc.*, No. 4:11-CV-00085, 2012 WL 12871956, at *5 (S.D. Iowa Dec. 11, 2012) (acknowledging that other district courts within the Eighth Circuit have required the plaintiff to "proffer some evidence that other similarly situated individuals desire to opt in to the litigation" and denying conditional certification); *Johnson v. VCG Holding Corp.*, 802 F. Supp. 2d 227, 237 (D. Me. 2011) (denying conditional certification where the plaintiffs' declarations did not identify other individuals who intended to join the litigation); *Harlow v. Legend Energy Servs., LLC*, No. 4:16-CV-02324, 2017 WL 4856775, at *2 (S.D. Tex. Oct. 26, 2017) (denying conditional certification because the plaintiff "has not included any affidavits from other potential class members, nor does he allege that he is aware of any specific individuals who are interested in joining the lawsuit."); *Detho v. Bilal*, No. CIV.A. H-07-2160, 2008 WL 2962821, at *1-3 (S.D. Tex. July 29, 2008) (finding no basis to conclude that the case was an "appropriate case" for collective-action status where the plaintiff's affidavit stated that "she believes that other employees will be interested.").

Like other courts within and outside of the Eighth Circuit, this Court has explained that more is required in order to grant conditional certification than what Fontenot has provided.  *See Martinez*, 265 F.R.D. at 499-501 (Kopf, J.) (stating "the court must initially determine whether

there are 'other employees of the defendant [ ] who desire to 'opt-in' and are 'similarly situated' [to the named plaintiff] with respect to their job requirements and with regard to their pay provisions.'"); *King v. West Corp.*, No. 8:04CV318, 2006 WL 118577, at *12 (D. Neb. Jan. 13, 2006) (stating the same at the second stage of the FLSA collective-action mechanism); *Lopez v. Tyson Foods*, No. 8:06CV459, 2008 WL 3485289, at *8 (D. Neb. Aug. 7, 2008) (explaining "[c]ourts who have faced the question of whether movants established substantial allegations have considered factors such as whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted . . . .").[1] Therefore, before granting Fontenot's conditional certification motion, this Court should consider whether Fontenot identified other potential plaintiffs and whether declarations of other potential plaintiffs have been submitted. *See Morales*, 2009 WL 1650016, at *4 (quoting *H & R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D.Tex.1999) (stating that on motions for conditional certification, courts should consider "factors such as whether potential plaintiffs were identified [and] whether affidavits of potential plaintiffs were submitted.").

If the Court did not require this analysis here, when there is only one named plaintiff and one individual that has filed a consent to join, the Court would essentially be certifying a collective action for a case that ultimately involves only two plaintiffs. *See Parker*, 492 F.Supp.2d at 1165 & n.4 (finding that "two plaintiffs . . . is insufficient" to render conditional certification proper because granting conditional certification in such a case would "render preliminary class certification automatic, as long as the Complaint contains the magic words: "Other employees similarly situated."); *Butcher*, 2013 WL 1668998, at *3 (stating that without a

---

[1] Notably, Fontenot does not direct the Court to its own authority on this point; instead, most of the cases cited by Fontenot on this issue are cases from the Fifth Circuit and elsewhere. *See* (Filing No. 24-1, p.7 (citing *Portillo v. Permanent Workers, L.L.C.*, 662 F.App'x 277, 280 (5th Cir. 2016); *Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623, 639 (D. Colo. 2002); *Villareal v. St. Luke's Episcopal Hosp.*, 751 F.Supp.2d. 902, 915-16 (S.D. Tex. 2010).

requirement that plaintiff "must do more than speculate" that others desire to join, "the parties and the Court could waste valuable resources issuing notice to potential plaintiffs only to find that the case cannot proceed as a collective action."); *Collins v. Barney's Barn, Inc.*, No. 4:12CV00685 SWW, 2013 WL 1668984 (E.D. Ark. Apr. 17, 2013) (finding the same).

In this case, there is no evidence anyone other than Fontenot and Peterson are willing to proceed against McNeil nor is there evidence of additional individuals who seek to join the matter. While Peterson filed a consent to become a party plaintiff, Fontenot has identified no other independent contractor welders who would join in this collective action, and it is questionable whether Peterson even did so voluntarily.[2] *See* (Filing No. 20).

To the extent Fontenot argues that the only way he can provide evidence that others seek to join the lawsuit is through certifying the collective action and providing notice, such an argument is unavailing. *See Parker*, 492 F.Supp.2d at 1166-67 (stating that "an FLSA plaintiff is not entitled to conditional certification simply to seek out others who might wish to join the action."); *Detho v. Bilal*, No. CIV.A. H-07-2160, 2008 WL 1730542, at *5 (S.D. Tex. Apr. 10, 2008) (stating the same and denying motion for conditional certification). Moreover, according to Fontenot, he has allegedly conversed with other welders since this litigation began and should already know their identities. *See* (Filing No. 24-3, ¶¶ 22). Therefore, it is not "an insurmountable hurdle" for Fontenot to contact other welders about opting in. *Parker*, 492 F.Supp.2d at 1166-67 (finding that it is not "an insurmountable hurdle" to require the plaintiff to

---

[2] Peterson sent text messages to Eddie Villanueva, a McNeil superintendent, stating that a female attorney had contacted him to convince him to sign a consent and "get money owed to [him]" and insinuating that anyone who joined Fontenot's lawsuit was a "stupid prick[ ]." *See* (Ex. 2, Declaration of Eddie Villanueva ("Villanueva Dec.", ¶¶ 3-4, Ex. A). These texts were sent by Peterson to Eddie Villanueva on January 31, 2018, the day before Fontenot's counsel filed Peterson's consent to join this lawsuit. *See* (*Id.*; Filing No. 20).

show that others desire to opt in, especially where the plaintiff likely knows the identity of several other potential plaintiffs).[3]

Like the plaintiffs in the cases denying conditional certification, Fontenot presents only his own speculation with no supporting documentation that he "believe[s]" other independent contractor welders would be interested to learn of "their opportunity to join this lawsuit." *See* Filing No. 24-3, ¶ 22).  That is insufficient to satisfy his burden.  *See Butcher*, 2013 WL 1668998, at *3-4 (stating that "plaintiffs must do more than speculate that putative opt-in plaintiffs would be interested in joining a collective action.").

**B.**     *McNeil has Shown Substantial Evidence that Others do Not Desire to Opt In to this Lawsuit.*

In sharp contrast to Fontenot's weak evidence in his declaration, McNeil has attached several Declarations of independent contractor welders who have no desire to join this lawsuit. *See* (Index of Evidence; Ex. 3, Declaration of Eduardo Barajas; Ex. 4, Declaration of Dakota Johnson; Ex. 5,  Declaration of Jesse Graves; Ex. 6,  Declaration of Mauricio Cuevas; Ex. 7, Declaration of Carlos Reyes; Ex. 8, Declaration of Jose Avila; Ex. 9, Declaration of Luis Gutierrez; Ex. 10, Declaration of Armando Munoz; Ex. 11, Declaration of Gomez Thomas; Ex. 12, Declaration of Carlos Olvera; Ex. 13. Declaration of Jose Benavides; Ex. 14, Declaration of James Page; Ex. 15, Declaration of Delbert Newlon; Ex. 16, Declaration of David Weaver; Ex. 17, Declaration of Justin Mark; Ex. 18, Declaration of Briar Garrison; Ex. 19, Declaration of Jeremiah Humphrey; Ex. 20, Declaration of Justin Sutterfield; Ex. 21, Declaration of Jake

---

[3] When considering the fact that Fontenot has allegedly "spoken with several former co-workers" about the lawsuit, and yet only one individual has consented to join since this lawsuit was filed in August 2017, Fontenot's statement that "there is a general interest among the welders" to join has little merit. *See* (Filing No. 24-3, ¶ 22). Moreover, Fontenot's citation to authority that suggests he cannot communicate with potential plaintiffs is especially perplexing in light of the fact that Fontenot himself admitted he has allegedly been speaking "with several former co-workers" and Peterson was called by a female attorney the day before his consent to join was filed, who told Peterson to join Fontenot's lawsuit and "get money owed to [him.]" *See* (Filing No. 24-1, pg. 7 (quoting *Reab*, 214 F.R.D. at 629; Filing No. 24-3, ¶ 22; Villanueva Dec., ¶¶ 3-4, Ex. A).

10

Simko; Ex. 22, Declaration of McQuaid Watson; Ex. 23, Declaration of Micah Gaus; Ex. 24, Declaration of Michael Ferguson). This is important evidence for the Court's consideration, since courts have often looked at this exact kind of evidence in denying conditional certification.

For instance, in *Saxton v. Title Max of Alabama, Inc.*, the court denied the plaintiffs' motion for conditional certification and notice, holding the motion failed "for want of any reasonable basis for the court to conclude that an interest to opt-in exists." 431 F. Supp. 2d 1185, 1188 (N.D. Ala. 2006). The court found particularly persuasive the fact that the defendant produced "substantial evidence," which included affidavits from members of the potential opt-in class indicating they "have no interest in opting in to [the] lawsuit." *See id.* at 1187-88. *See also Wombles v. Title Max of Alabama, Inc.*, No. 3:03-CV-1158-C, 2005 WL 3312670 (M.D. Ala. Dec. 7, 2005) (denying the plaintiffs' motion for conditional certification based in part on a comparison of the six named plaintiffs' affidavits stating that they "believe" other managers would join to the defendants' submission of employee affidavits in opposition to the plaintiffs' motion).

In light of the Court's task to consider evidence that individuals desire to opt in, courts approve of collective action defendants gathering facts to resist conditional certification, as McNeil did in this case. *See Kerce v. West Telemarketing Corp.*, 575 F.Supp.2d 1354, 1366 (S.D. Ga. 2008) (denying plaintiff's motion to strike the defendant's declarations of potential class members saying they have no interest in pursuing the litigation because "each side has the right to communicate with potential class members."). *See also Snide v. Disc. Drug Mart, Inc.*, No. 1:11CV0244, 2011 WL 5434016, at *9 (N.D. Ohio Oct. 7, 2011), *report and recommendation adopted*, No. 1:11-CV-00244, 2011 WL 5452153 (N.D. Ohio Nov. 8, 2011) (finding that "[a] defendant employer may communicate with its employees prior to certification of a putative

collective action brought under the FLSA" and that "[t]he employer's right to communicate with employees is also protected by the First Amendment.").

Further bolstering the veracity of the declarations of the independent contractor welders is the fact that the independent contractor welders have also been contacted by plaintiff's counsel and offered an opportunity to join the lawsuit. Accordingly, Fontenot's argument that he cannot communicate with the independent contractor welders in order to determine whether others desire to join this lawsuit is disingenuous and unconvincing. *See* (Filing No. 24-1, p. 7; Ex. 2, Villanueva Dec. ¶¶ 3-4, Ex. A). *See Fengler v. Crouse Health Sys., Inc.*, 634 F. Supp. 2d 257, 261 (N.D.N.Y. 2009) (finding that in collective action cases, "the court cannot restrict communications "without a specific record showing by the moving party of the particular abuses by which it is threatened."); *Parks v. Eastwood Ins. Servs., Inc.*, 235 F. Supp. 2d 1082, 1085 (C.D. Cal. 2002) (concluding "there is no prohibition against pre-"opt-in" communication with a § 216(b) potential plaintiff, unless the communication undermines or contradicts the Court's notice."); *Mak v. Oska Japanese Rest., Inc.*, No. CV H-12-3409, 2013 WL 12155015, at *2 (S.D. Tex. Sept. 16, 2013) (When a § 216(b) has not yet been certified as a collective action, "communications with potential class members are generally not prohibited . . . . Allegations that pre-certification communications are misleading, confusing or coercive, will not warrant any relief unless there is a 'clear record and specific findings that reflect a weighing of the need for a limitation.'").

Accordingly, this Court should follow other district courts both within and outside the Eighth Circuit and require Fontenot to do more than speculate before putting McNeil "to the expense and effort of notice to a conditionally certified class of claimants." *See Detho*, 2008 WL 2962821, at *2. With such a requirement, Fontenot's Motion should be denied because there is

no "reasonable basis for the court to conclude that an interest to opt-in exists," especially in light of the sharp contrast between Fontenot's declaration that he "believe[s] other McNeil welders would be interested" and the actual declarations of independent contractor welders. *See Saxton,* 431 F. Supp. 2d at 1188; (Filing No. 24-3); (Index of Evidence; Ex. 3, Declaration of Eduardo Barajas; Ex. 4, Declaration of Dakota Johnson; Ex. 5,  Declaration of Jesse Graves; Ex. 6, Declaration of Mauricio Cuevas; Ex. 7, Declaration of Carlos Reyes; Ex. 8, Declaration of Jose Avila; Ex. 9, Declaration of Luis Gutierrez; Ex. 10, Declaration of Armando Munoz; Ex. 11, Declaration of Gomez Thomas; Ex. 12, Declaration of Carlos Olvera; Ex. 13. Declaration of Jose Benavides; Ex. 14, Declaration of James Page; Ex. 15, Declaration of Delbert Newlon; Ex. 16, Declaration of David Weaver; Ex. 17, Declaration of Justin Mark; Ex. 18, Declaration of Briar Garrison; Ex. 19, Declaration of Jeremiah Humphrey; Ex. 20, Declaration of Justin Sutterfield; Ex. 21, Declaration of Jake Simko; Ex. 22, Declaration of McQuaid Watson; Ex. 23, Declaration of Micah Gaus; Ex. 24, Declaration of Michael Ferguson). *See also Anderson,* 2012 WL 12871956, at *5 (reasoning that in the absence of evidence that other similarly situated individuals desire to opt in, there is "no basis upon which the [c]ourt could conclude that the action was an "appropriate case" for collect[ive]-action treatment.").

## II.     Determining Whether the Independent Contractor Welders were Misclassified Requires Individualized Proof, Such that the Independent Contractor Welders are Not Similarly Situated.

On the similarly situated question, Fontenot must present evidence 'establishing a colorable basis that the putative class members are the victims of a single decision, policy, or plan.'" *Morales,* 2009 WL 1650016, at *4 (quoting *Burch v. Qwest Commc'ns Int'l, Inc.,* 500 F.Supp.2d 1181, 1186 (P. Minn. 2007)). This means that Fontenot "must present more than mere

allegations; i.e., some evidence to support the allegations is required." *Martinez*, 265 F.R.D. at 496 (Kopf, J.) (quoting *Young v. Cerner Corp.*, 503 F.Supp.2d 1226, 1229 (W.D. Mo. 2007)). This is yet another burden that Fontenot has failed to satisfy.

Despite Fontenot's suggestion to the contrary, in determining whether proposed collective class members were subject to a single practice of the defendant, courts have, in fact, held that putative plaintiffs are not similarly situated if answering the question of whether they were misclassified requires individualized proof. *See Bamgbose v. Delta-T Group, Inc.*, 684 F.Supp.2d 660, 668-69 (E.D. Penn. 2010) (reasoning that the court must determine "whether the proof to demonstrate that the workers are 'employees' or 'independent contractors' can be applied to the class as a whole."); *Christianson v. NewPark Drilling Fluids, LLC*, No. CIV.A. H-14-3235, 2015 WL 1268259, at *4 (S.D. Tex. Mar. 19, 2015) ("evaluating whether Plaintiff has demonstrated that he and the putative class members are similarly situated for purposes of applying the economic realities test at the appropriate phase of the case in the future" and denying conditional certification); *Andel v. Patterson-UTI Drilling Co.*, 280 F.R.D. 287, 290 (S.D. Tex. 2012) (finding that the "briefs and evidence show that there are enough differences between each individual Plaintiff that the court would still be required to conduct individualized analysis of each putative plaintiff" and such "individualized analysis would contravene a primary purpose behind class action lawsuits, *i.e.*, the promotion of judicial economy.") ; *Demauro v. Limo, Inc.*, No. 8:10-CV-413-T-33AEP, 2011 WL 9191, at *4 (M.D. Fla. Jan. 3, 2011) (finding that the determination on whether the workers were misclassified would require separate examination for each worker, and stating that this "necessarily individualized assessment eviscerates all notions of judicial economy that would otherwise be served by conditional class certification."). Accordingly, with a misclassification case, like the one Fontenot alleges, the

Court should "determine whether the proof to demonstrate that the workers are 'employees' or 'independent contractors' can be applied to the class as a whole." *See Andel*, 280 F.R.D. at 290.

The facts of this case are substantially similar to those in *Andel*.  In *Andel*, the court denied the plaintiff's motion for conditional certification because individualized inquiries would be required. *See id.*[4]  For instance, among the four named plaintiffs:

> the number of hours worked each week varied significantly; the number of hours worked each day varied significantly; the pattern of days on and days off of work varied significantly; the pattern of invoice submission varied significantly; and the length of time each Plaintiff worked for Defendant varied significantly. . . . . the Court notes that each Plaintiff's relative investments and ability to control his opportunities for profit and loss also varied significantly, including how much he spent on equipment and supplies, whether or not he purchased general liability insurance, and whether or not he paid an assistant to help with bookkeeping.

> *Id.*  Because of these significant variations between the potential plaintiffs as a whole, the court denied conditional certification. *Id.*

Here, McNeil has rebutted Fontenot's evidence by providing proof of variations among the welders, such that any determination of whether the welders are employees or independent contractors cannot be applied to the class as a whole. *See* (Ex. 1, McNeil Dec.).  The independent contractor welders are engaged on a project by project basis. (*Id.*, ¶ 13).  The welders do not all work on the same project at the same time, the number of hours and length of time they are performing services may vary significantly, and they are not all performing services at the same

---

[4] While certain cases have found *Andel* distinguishable, those cases found important the fact that potential plaintiffs in those cases worked at the same location, with the same duties, and in the same positions, and did not maintain expenses independent from the defendant. *See Kemp v. Databank IMX, LLC*, No. CIV.A. H-14-1090, 2015 WL 1897929 (S.D. Tex. Mar. 27, 2015), *report and recommendation adopted*, No. CIV.A. H-14-1090, 2015 WL 1887131 (S.D. Tex. Apr. 24, 2015) (distinguishing *Andel* because in *Kemp* "all plaintiffs worked in the same location and in the same position . . . did not maintain independent expenses . . . and agreed to the same payment provisions."); *Vaughn v. Document Group Inc.*, 250 F.Supp.3d 236, 243 (S.D. Tex. 2017) (contrasting from *Andel* because the defendant did not rebut the plaintiff's evidence "with sufficiently substantial proof of variations among the putative class members to prevent conditional certification.").  The analysis in these cases is not applicable here because the independent contractor welders do not work on the same project or in the same location, the number of hours and length of time they are performing services varies, and depending on the project, each independent contractor welder can and often do have a different level of investment. *See* (McNeil Dec., ¶¶ 9-14).

location. (*Id.*, ¶¶ 13-14).   There are also differences between each independent contractor welder's level of investment in their essential tools and equipment. ((*Id.*, ¶¶ 9-11).   Additionally, independent contractor welders offer their services through a variety of business entity structures, but not all welders' businesses are structured the same. (*Id.*, ¶ 12). Thus, this Court cannot later resolve the misclassification question in this case without individualized determinations. *See Andel*, 280 F.R.D. at 290. *See also Martinez*, 265 F.R.D. at 497 (Kopf, J.) (stating that "if a trial would require 'individualized determinations to resolve the claims of each plaintiff, certification as a collective action may be inappropriate.'").

III. **If the Court Conditionally Certifies a Class (Which it Should Not), Fontenot's Proposed Notice and Consent Form, Schedule and Process for Providing Notice Should Not be Approved and this Court Should Instead Approve McNeil's Proposed Notice and Consent Form, Schedule and Process.**

Alternatively, and without conceding the Court should grant Fontenot's Motion, if the Court decides to enter an order conditionally certifying the collective class, which it should not, Fontenot's proposed notice and consent form, schedule and process for providing notice should not be approved by the Court as submitted. While Section III.A. of this Brief provides the Court with a detailed analysis of the many improprieties in Fontenot's proposed notice and consent form, schedule, and process for providing notice, this Court should not be forced to rummage around in Fontenot's submission in order to pick and choose a legally acceptable notice. Accordingly, in Section III.B. of this Brief, McNeil provides the Court with its own proposed notice and consent form, schedule and process for providing notice.   Exhibit 25 to McNeil's Index of Evidence is McNeil's proposed Notice and Consent Form. *See* (Ex. 25, Proposed Notice and Consent Form).

A.     *Fontenot's Proposed Notice and Consent Forms, Schedule, and Process for Providing Notice Should Not be Approved.*

While Fontenot claims its notice and consent "forms are based on various Notice and Consent forms previously approved by Courts throughout the Country," in reality, his proposed notice and consent form, schedule, and process for providing notice are contrary to this Court's previous order and the order Fontenot attached to his submission. *Compare* (Filing No. 24-1, p.13) *with Martinez*, 265 F.R.D. at 499-501 (Kopf, J.), *and Kilmon v. Saulsbury Indus., Inc.*, No. MO:17-CV-00099-RAJ, 2017 WL 7052328 (W.D. Tex. Dec. 13, 2017) (agreeing with the defendant that the notice *should not* include the caption of the case, finding that language in the notice regarding retaliation should be revised to reflect the law, and ordering revisions to the notice to advise putative class members of their right to retain separate counsel and pursue their rights independently), (Filing No. 24-5).  Consequently, and without suggesting that the Court should grant Fontenot's Motion, which it should not, McNeil provides the Court with the following objections to Fontenot's proposed notice and consent forms, schedule, and process for providing notice.

First, and without conceding that conditional certification is appropriate, McNeil objects to the use of the case caption as a heading on plaintiff's proposed notice. As this Court previously stated in *Martinez*, the court "must scrupulously avoid endorsing or appearing to endorse the merits of the underlying claim" and "placing the court name in the heading is improper because it may be misconstrued as judicial support for the plaintiffs' litigation." *See Martinez*, 265 F.R.D. at 499-501 (Kopf, J.) (detailing multiple issues with the plaintiffs' proposed notice and consent forms).  To the extent the Court grants Fontenot's Motion, which it should not, McNeil requests that the heading of the proposed notice be modified similar to the

heading as modified by this Court in *Martinez. See* 265 F.R.D. at 499. [5]   Thus, McNeil asks this

court to modify the heading as follows:

**NOTICE OF COLLECTIVE ACTION LAWSUIT**
*FONTENOT, ET AL. V. MCNEIL INDUSTRIAL, INC.*

This notice is for the sole purpose of determining the identity of those persons who wish to be involved in this case. Although the United States District Court for the District of Nebraska has authorized sending this notice, the court has not considered or made any decision as to the merits of plaintiffs' claims or defendant's defenses.

Second, the description of the case in the notice and the definition of which individuals

will receive notice is skewed in favor of Fontenot, and the Court should not approve a notice

with language that favors Fontenot. *See Martinez*, 265 F.R.D. at 500 (finding the notice did not

contain neutral language and ordering the parties to "meet and confer to reach a consensus on

neutral language to describe their respective positions.").   If the Court elects to conditionally

certify a collective class, which it should not, McNeil requests that the Court modify the

definition of which individuals will receive notice as follows: "independent contractor welders

engaged by McNeil Industrial, Inc. and paid an hourly rate in the last three (3) years."

Third, to the extent the Court grants Fontenot's motion, which it should not, McNeil is

willing and able to provide addresses for the independent contractor welders, and therefore,

disclosure of the welders' telephone numbers is not warranted. *See Martinez*, 265 F.R.D. at 501

(denying the plaintiff's request for telephone numbers where there was no evidence indicating

the employer was "unable or unwilling to provide correct and current addresses for its

---

[5] For ease of reference, the following language represents this Court's modification in *Martinez*:

**NOTICE OF COLLECTIVE ACTION LAWSUIT**
*MARTINEZ, ET AL. v. CARGILL MEAT SOLUTIONS CORP.*

This notice is for the sole purpose of determining the identity of those persons who wish to be involved in this case. Although the United Stated District Court for the District of Nebraska has authorized sending this notice, the court has not considered or made any decision as to the merits of plaintiffs' claims or defendant's defenses.

*Martinez*, 265 F.R.D. at 499 (Kopf, J.).

employees, and therefore no evidence supporting plaintiffs' request for personal phone numbers").

Fourth, Fontenot's proposed methods for dissemination of the notice are unnecessary and inappropriate. Fontenot seeks to disseminate the notice through an initial mailing and emailing, posting of the notice and consent forms on all McNeil jobsites for 60 days in an open and obvious location, a second mailing and emailing, and Fontenot's counsel calling putative class members. As in *Martinez*, here "[t]here is no evidence personal mailing will be an unreliable means of delivering notice to the putative plaintiffs." *See Martinez*, 265 F.R.D. at 500. Thus, if the Court elects to conditionally certify this lawsuit, which it should not, the Court should order that notice by mailing is the only court-approved method for disseminating notice of plaintiff's collective action to McNeil employees.[6]

Fifth, the plaintiff's proposed notice allows putative plaintiffs 60 days to opt-in to the collective action. The length of 60 days from the date of the mailing is excessive. Without conceding that the Court should grant Fontenot's Motion, which it should not, McNeil request that this Court reduce the length of the opt-in deadline to 45 days. *See Martinez*, 265 F.R.D. at 501 (stating "Forty-five days is sufficient time for putative plaintiffs to consider their options and, if desired, seek the assistance of outside counsel in deciding whether to join this lawsuit.").

B.    *McNeil's Proposed Notice and Consent Forms, Schedule and Process for Providing Notice Should Be Approved by This Court.*

Due to the numerous deficiencies with Fontenot's proposed notice, McNeil attaches its own proposed Notice and Consent Form to be approved by the Court in the event the Court

---

[6] To the extent the Court finds that another method in addition to mailing is proper, which it should not, McNeil respectfully requests that the parties be granted additional time to confer and agree on one additional method of circulating notice. *See Morales*, 2009 WL 2886278, at *6 (granting motion to facilitate notice, but providing the parties with additional time to confer and agree to a proposed "joint notice form and an agreed method to circulate the notice to those employees who cannot be reached by mail.").

grants Fontenot's Motion, which it should not. *See* (Ex. 25, Proposed Notice and Consent Form).[7]  McNeil has also revised the definition of which individuals will receive the notice and consent form to state: "independent contractor welders engaged by McNeil Industrial, Inc. and paid an hourly rate in the last three (3) years."

Additionally, and without conceding the Court should grant Fontenot's Motion, McNeil provides the Court with following schedule for providing notice to the independent contractor welders:

| DEADLINE | SUBJECT |
|---|---|
| **15 Days From Order Approving Notice to Potential Class Members** | McNeil to disclose to a Fontenot's counsel in a usable electronic format such as Excel (.xlsx) the full names and last known addresses (with city, state and zip code) of all current and former independent contractor welders engaged by McNeil Industrial, Inc. and paid an hourly rate in the last three (3) years." |
| **20 Days From Order Approving Notice to Potential Class Members** | Fontenot's counsel shall send a copy of the Court-approved Notice and Consent forms to the Putative Class Members by First Class U.S. Mail. |
| **45 Days From Date Notice is Mailed to Potential Class Members** | The Putative Class Members shall have 45 days to return their signed Consent forms to Fontenot's counsel for filing with the Court. |

While McNeil has set forth numerous deficiencies in Fontenot's proposed notice and consent form and schedule and provided the Court with McNeil's own proposed Notice and Consent Form and schedule, this is still an inappropriate case for conditional certification and the issuance of notice, and therefore, the Court should deny Fontenot's Motion.

## CONCLUSION

For all of the foregoing reasons, McNeil Industrial, Inc. respectfully requests that the Court deny Plaintiff's Motion.

---

[7] If the Court does not approve of either Fontenot's proposed notice and consent form or McNeil's proposed notice and consent form, McNeil requests that this Court order the parties to confer in order to agree on a proposed joint notice and consent form.

Dated this 6th day of April, 2018.

MCNEIL INDUSTRIAL, INC. Defendant

By: *s/ David A. Yudelson*
_____
Margaret C. Hershiser, #19545
David A. Yudelson, #23257
Nathan T. Burkman, #25210
Alyssa M. Stokes, #26400
KOLEY JESSEN P.C., L.L.O.
One Pacific Place, Suite 800
1125 South 103rd Street
Omaha, NE 68124-1079
(402) 390-9500
(402) 390-9005 (facsimile)
Margaret.Hershiser@koleyjessen.com
David.Yudelson@koleyjessen.com
Nathan.Burkman@koleyjessen.com
Alyssa.Stokes@koleyjessen.com

*Attorneys for Defendant McNeil Industrial, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 6, 2018, I electronically filed the foregoing Brief in Opposition to Plaintiff's Expedited Motion for Conditional Certification and Notice to Putative Class Members with the Clerk of the Court which was delivered to all counsel of record via the Court's CM/ECF system.

*s/ David A. Yudelson*