IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MATTHEW FONTENOT, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MCNEIL INDUSTRIAL, INC.,<br><br>Defendant. | Case No.: 4:17-cv-03113<br><br>**SUR-REPLY BRIEF IN OPPOSITION TO PLAINTIFF'S EXPEDITED MOTION FOR CONDITIONAL CERTIFICATION AND NOTICE TO PUTATIVE CLASS MEMBERS** |

Defendant McNeil Industrial, Inc. ("McNeil"), respectfully submits this Sur-Reply Brief in Opposition to the Expedited Motion for Conditional Certification and Notice to Putative Class Members (the "Motion") of Plaintiff, Matthew Fontenot ("Fontenot"). For the reasons originally provided and as set forth below, the Court should deny Fontenot's Motion.

**INTRODUCTION**

Fontenot submitted a Reply Brief in Support of Plaintiff's Motion (the "Reply Brief"). ([Filing No. 35](#)). McNeil requested and received leave from this Court to submit a Brief in Sur-Reply to address two issues with Fontenot's Reply Brief. ([Filing No. 37](#); Filing No. 38).

First, in its Part A "Summary" and throughout Part B of Fontenot's Reply Brief, Fontenot's counsel made serious allegations of improper communications attributed to "McNeil (and presumably its attorneys)," and accuses "McNeil's attorneys" of "being present" during such communications. *See* ([Filing No. 35, at ECF pp. 1-5](#)). Fontenot's accusations in Part B of the Reply Brief are made with no supporting evidence and in direct contradiction of what actually happened here. *See generally* ([Filing No. 35 at ECF p. 1-5](#); Exhibit A, Supplemental Declaration of Eduardo Barajas ("Barajas Dec."); Exhibit B, Declaration of Margaret C.

1

Hershiser ("Hershiser Dec."); Exhibit C, Declaration of David A. Yudelson ("Yudelson Dec."); Exhibit D, Declaration of Nathan T. Burkman ("Burkman Dec."); Exhibit E, Declaration of Alyssa M. Stokes ("Stokes Dec.")). McNeil and its counsel take those accusations seriously, which is why permission to file this brief was sought.

Second, while accusing McNeil and its counsel of impropriety, Fontenot omitted from the Reply Brief the correct legal standard courts apply when analyzing any communications with potential plaintiffs at the pre-certification stage of FLSA collective actions like this one and misrepresented many of the legal authorities relied upon. McNeil's personnel followed the procedure that has been approved by other courts when obtaining the declarations from the independent contractor welders who are not parties to this litigation; McNeil's attorneys were not present and had no role in any conversations with any independent contractor welders; Fontenot and his counsel have no factual basis for any of the accusations in the Reply Brief; and, most of the cases cited by Fontenot either do not apply for the proposition cited or quoted or do not support Fontenot's arguments that communications should be restricted at this point.

## LEGAL STANDARD

As a general matter, defendants are free to communicate with potential plaintiffs in a collective action about the lawsuit. *See Snide v. Disc. Drug Mart, Inc.*, No. 1:11CV0244, 2011 WL 5434016, at *9 (N.D. Ohio Oct. 7, 2011), *report and recommendation adopted*, No. 1:11-CV-00244, 2011 WL 5452153 (N.D. Ohio Nov. 8, 2011) (finding that "[a] defendant employer may communicate with its employees prior to certification of a putative collective action brought under the FLSA" and that "[t]he employer's right to communicate with employees is also protected by the First Amendment."); *Longcrier v. HL-A Co.*, 595 F. Supp. 2d 1218, 1226 (S.D. Ala. 2008) (stating "[a]s a general matter, employers are free to communicate with unrepresented

prospective class members about the lawsuit and even to solicit affidavits from them concerning the subject matter of the suit."); *Parks v. Eastwood Ins. Servs., Inc.*, 235 F. Supp. 2d 1082, 1085 (C.D. Cal. 2002) (concluding "there is no prohibition against pre-"opt-in" communication with a § 216(b) potential plaintiff, unless the communication undermines or contradicts the Court's notice."). Before restricting any communications, there must be a "clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *See Great Rivers Co-op. of Se. Iowa v. Farmland Indus., Inc.*, 59 F.3d 764, 766 (8th Cir. 1995) (stating also that in a Rule 23 class-action, the "district court may not order restraints on speech under Fed.R.Civ.P. 23(d) except when justified by actual or threatened misconduct of a serious nature."). *See also Ahle v. Veracity Research Co.*, 663 F.Supp.2d 713, 716 (D. Minn. 2009) (applying this standard to a collective action and stating that the court's weighing "should result in a carefully drawn order that limits speech as little as possible . . . ."). *See also Fengler v. Crouse Health Sys., Inc.*, 634 F. Supp. 2d 257, 261 (N.D.N.Y. 2009) (stating "[t]he court cannot restrict communications 'without a specific record showing by the moving party of the particular abuses by which it is threatened.'").

## ARGUMENT

### A. Fontenot's Cited Authority Does Not Support Restricting McNeil's Communications

Right out of the gate, without a shred of support, Fontenot, through his Texas counsel, repeatedly accused McNeil and its counsel of improper communications with potential class members that implicated the ethical obligations of McNeil's counsel and overtly suggested that they had been violated. *See* (Filing No. 35 at ECF pp. 1-4). In our courts, however, we aspire to a higher standard of civility and professionalism. *See* NEGenR 1.8(h). *See also Spiering v.*

3

*Heineman*, 448 F. Supp. 2d 1129, 1142 (D. Neb. 2006) (Kopf, J.) ("I thank the lawyers for their helpful briefs. More importantly, I compliment them for their commitment to civility and professionalism"). Likewise, the Court, rightfully so, expects that litigants' presentation of the law and its application will be earnest and candid. *See Fjellin for Leonard Van Liew Living Tr. v. Frauenshuh Hosp. Grp. of Minn.*, No. 8:15CV67, 2016 WL 8376460, at *1 & n.3 (D. Neb. Apr. 18, 2016) (Kopf, J.) (noting counsel's discussion of cases that support non-movant's argument and "admirably noting their ethical obligation to disclose those cases to the court "to ensure a just result"). With these standards in mind, an examination of the cases Fontenot cited is warranted.

First, a significant number of the cases cited by Fontenot as a basis for the Court restricting communications involve Rule 23 class actions,[1] which are different from collective actions under the FLSA. Fontenot failed to discuss that in Rule 23 class actions, plaintiff's counsel has a heightened interest in preventing communications with putative plaintiffs, an interest which is lessened in an FLSA collective action because at the pre-certification stage there are no members of any class. *See* (Filing No. 35 at ECF pp. 1, 3); *Jones v. Casey's General Stores*, 517 F. Supp. 2d 1080, 1085 (S.D. Iowa 2007) (stating "[g]iven that the reasoning for finding that [Rule 23] class counsel owe a fiduciary duty to putative class members prior to class certification is inapplicable in the context of 'opt-in' collective actions, the Court concludes that

---

[1] *See Jones v. Casey's General Stores*, 517 F. Supp. 2d 1080, 1085 (S.D. Iowa 2007); *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193 (11th Cir. 1985); *Bublitz v. E.I. duPont de Nemours & Co.*, 196 F.R.D. 545 (S.D. Iowa 2000); *Quezada v. Schneider Logistics Transloading & Distrib.*, No. 12-2188, 2013 WL 1296761 (C.D. Cal. Mar. 25, 2013); *In re Sch. Asbesto Litig.*, 842 F.2d 671, 680 (3d Cir. 1988); *Tedesco v. Mishkin*, 629 F. Supp. 1474 (S.D.N.Y. 1986); *Sjoblom v. Charter Commc'ns, LLC*, No. 3:07-CV-0451-BBC, 2007 WL 5314916 (W.D. Wis. Dec. 26, 2007).

Plaintiffs' counsel have not 'assumed responsibility for representing the putative [collective members].'").[2]

Furthermore, the cases cited by Fontenot are inapplicable on their facts. For example, in *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193 (11th Cir. 1985), the question before the court was whether the first amendment "bars sanctions against a defendant and counsel secretly soliciting exclusion requests from potential members of a Rule 23(b)(3) plaintiff class." *See Kleiner*, 751 F.2d at 1196. Contrary to Fontenot's statement in the Reply Brief, *Kleiner* **did not** involve a court's "power to sanction counsel for contacting potential class members about [an] FLSA collective action …." (Filing No. 35 at ECF p. 1, n. 1).

Similarly, Fontenot states that in *Bublitz v. E.I. duPont de Nemours & Co*., 196 F.R.D. 545 (S.D. Iowa 2000), the Court "limited "defendants' communication with putative class members prior to class certification." (Filing No. 35 at ECF p. 2). However, the actual context of the decision was that the defendants had sought permission from the court to make a settlement offer to each member of the putative class before the class could be certified and the limitations imposed by the court were similar to the plan proposed by the defendants. *See Bublitz*, 196

---

[2] As further discussed in Part C, and not recognized anywhere in Fontenot's Reply Brief, "[p]otential class members in a FLSA action are not considered parties to the action until they opt-in. . . . This is distinct from a Rule 23 class action, in which absent members are considered parties to the action. Accordingly, unlike Rule 23 class members, potential plaintiffs in a FLSA action do not have an implicit attorney-client relationship with the plaintiffs' counsel that limits unauthorized defense communication with them." *Talamantes v. PPG Indus., Inc.*, No. 13-CV-04062-WHO, 2014 WL 4145405, at *6 (N.D. Cal. Aug. 21, 2014). Additionally, as the court stated in *Parks v. Eastwood Ins. Servs., Inc*.:

> In a class action certified under Rule 23, Federal Rules of Civil Procedure, absent class members are considered represented by class counsel unless they chose to "opt out.". . . The situation is different in a § 216(b) representative action for unpaid wages or overtime. . . . Until they "opt-in," prospective § 216(b) plaintiffs are not yet parties to the action, they have no attorney, and no attorney-client relation is yet in issue. The Court's authorization to give notice in a § 216(b) case does not create a class of represented plaintiffs as it does in a Rule 23 class action.

235 F. Supp. 2d 1082, 1083 (C.D. Cal. 2002) (internal citations omitted).

F.R.D. at 548, 550 (stating also generally, "[a] defendant-employer has the right to communicate settlement offers directly to putative class member employees.").

In *Quezada v. Schneider Logistics Transloading & Distrib.*, No. 12-2188, 2013 WL 1296761 (C.D. Cal. Mar. 25, 2013), a case that Fontenot cites for the proposition that "courts consider whether a supervisor asked or told class members to complete "happy camper" declarations in determining whether communications were improper[,]" the court was actually addressing a series of interviews conducted by the defendants lawyers where the lawyers misled the putative plaintiffs by telling them "that the interviews were only part of an 'internal investigation.'"[3] *See* (Filing No. 35 at ECF p. 3); *Quezada*, 2013 WL 1296761, at *3.

The *In re School Asbestos* case is quoted in Fontenot's brief for the broad language that misleading communications with putative class members threatens the "fairness of the litigation process, the adequacy of the representation and the administration of justice generally." *See* Filing No. 35 at ECF p. 3); *In re Sch. Asbesto Litig.*, 842 F.2d 671, 680 (3d Cir. 1988). However, *In re School Asbestos* involved a Rule 23 class action, as opposed to a collective action under the FLSA, and the Third Circuit only required defendants to disclose the existence of the litigation when communicating with putative plaintiffs. *Id.* at 685. Moreover, the disclosure requirement was only imposed after the defendants had distributed a booklet that, among other things, discussed "the growing body of scientific evidence concerning the very low level of risk to building occupants from installed asbestos-containing products" without mentioning the class action. *Id.* at 674.

---

[3] It is necessary to note that McNeil's counsel could not identify anywhere in the *Quezada* opinion where the court uses the term "happy camper" or where the court "not[es] [that] courts consider whether a supervisor asked or told class members to complete 'happy camper' declarations in determining whether communications were proper." *See* (Filing No. 35 at ECF p. 3).

A similarly inapplicable case cited by Fontenot is *Tedesco v. Mishkin*, 629 F. Supp. 1474 (S.D.N.Y. 1986), which was also a Rule 23 class action and involved the unique circumstance in which the defendant (who happened to be an attorney) was found guilty of "subornation of perjury or other wrongful conduct …." *See* (Filing No. 35 at ECF p. 3); *Tedesco*, 629 F. Supp. 1474, 1476. There is nothing remarkable about the rule in *Tedesco* that an attorney should be sanctioned when he or she, while acting as a defendant in a securities fraud class action, suborns perjury, threatens putative plaintiffs with legal action, and otherwise goes to great lengths to interfere with the litigation. There is also nothing applicable about that rule in this case.

*Sjoblom v. Charter Commc'ns, LLC*, No. 3:07-CV-0451-BBC, 2007 WL 5314916 (W.D. Wis. Dec. 26, 2007) is cited by Fontenot to claim a defendant "may not rely on declarations obtained from class members if they were not fully informed of their interests in the lawsuit." *See* (Filing No. 35 at ECF p. 4). But that case involved communications made by the defendant's attorneys personally interviewing putative plaintiffs under the pre-text of a training program. *See Sjoblom*, 2007 WL 5314916, at *3. In the course of those pre-textual interviews in *Sjoblom*, defendant's attorneys obtained declarations from putative plaintiffs without fully informing them about the lawsuit or that they could be potential plaintiffs in that lawsuit. *Id.* But none of the facts present in *Sjoblom* are present here. *See* Section C, *infra.*, *See also Ross v. Wolf Fire Prot., Inc.*, 799 F. Supp. 2d 518, 527 n. 14 (D. Md. 2011) (rejecting plaintiff's argument based on *Sjoblom* because "there [was] no evidence that the Defendants lied to the employees, and Rubenstein's affidavit shows that she informed the employees that the decision to sign the affidavit was voluntary and would not affect their employment with Fire Protection.").[4]

---

[4] In *Ross v. Wolf Fire Prot., Inc.*, the court also noted that a "defendant in a [FLSA class] action is not categorically forbidden from communicating with prospective opt-in plaintiffs,' but is 'free to [appropriately] communicate with unrepresented prospective class members about the lawsuit and even to solicit affidavits from them concerning the subject matter of the suit.") (brackets in original). *Id.* at 526.

The cases cited by Fontenot that actually do involve FLSA collective actions are also distinguishable and Fontentot's presentation of those cases is not exactly accurate. For instance, Fontenot cites *Belt v. Emcare, Inc.* and claims the case involved pre-certification communications. *See* (Filing No. 35 at ECF p. 3). Fontenot's description of the case is only partially true. *Belt* involved a collective action *that had already been conditionally certified* and in which "[d]efendants unilaterally mailed their own letter to the absent class members just before the Court's sanctioned notice was to be sent." *See Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664, 666 (E.D. Tex. 2003). In addition to the effort to circumvent the court sanctioned notice, the court was also troubled by the fact that the letter "misrepresented many of the issues in this action in such a way as to discourage absent class members from joining the suit." *Id.* As discussed further below in Section B, that did not occur here.

In *Stransky v. HealthOne of Denver, Inc.*, 929 F.Supp.2d 1100 (D. Colo. 2013), which Fontenot again cites for the proposition that "courts have issued restrictive orders prior to conditional certification of an FLSA class[,]" the court in *Stransky* had already granted conditional certification of the collective class, approved a class notice, and issued an order effectively prohibiting unilateral in-person communications by either party. *See* (Filing No. 35 at ECF p. 3); *Stransky v. HealthOne of Denver, Inc.*, 929 F.Supp.2d 1100 (D. Colo. 2013). In addition to these distinctions, the court took issue with the fact that the testimony indicated that the defendant's had told the potential class members "that [they] were going to lose, and that [they] would be responsible for paying [the defendant's] attorneys' fees and costs out of [their] paychecks …" and other misleading information. *See Stransky*, 929 F. Supp. 2d at 1107-08.[5]

---

[5] Although the court took issue with the defendant's particular communications in that case, the *Stransky* court did note that "[i]n a Section 216 action, 'in many cases there will be no problem [with communications to putative class members] requiring remedies at all.'" *Id.* at 1106 (brackets in original). The court further explained that even after "conditional certification is granted, communications with the

8

Similar to Fontenot's treatment of *Stransky*, Fontenot also cites *Bass v. Pjcomn Acquisition Corp* to support Fontenot's statement that "courts have issued restrictive orders prior to conditional certification of an FLSA class[.]" *See* (Filing No. 35 at ECF p. 3). That case, however, actually involved communications after the court had granted conditional certification and had approved a specific class notice. *See Bass v. Pjcomn Acquisition Corp.*, No. 09-CV-01614-REB-MEH, 2011 WL 902022 (D. Colo. Mar. 14, 2011). Notably, the court in *Bass* still did not prohibit or even restrict the defendant's ability to communicate with the putative collective class members. *Id.* at *5. The court rejected the plaintiff's request to prohibit further communications with the putative plaintiffs because the court found that the defendant's prior communications did "not rise to the level of unilateral, unsolicited, abusive and/or coercive comments necessary to impose the Plaintiffs' requested restrictions against the Defendants." *Id. See also DeKeyser v. Thyssenkrupp Waupaca, Inc.,* No. 08-C-488, 2008 WL 11383774, at *5 (E.D. Wis. Dec. 18, 2008) ("Absent any history of abusive or retaliatory conduct by the employer, it is the language of the communication, not an employee's subjective perception of it, that determines whether it is abusive or threatening.").

Lastly, in *Longcrier v. HL-A Co*, cited by Fontenot for its statement that "a defendant may not rely on declarations obtained from potential class members if they were not fully informed," the issue addressed by the court was the fact that defense counsel had obtained declarations by putative plaintiffs by calling each of them in for a meeting and telling them "'that [the defendants were] conducting a survey and that [the putative plaintiff] needed to answer questions and sign a statement.'" *See* (Filing No. 35 at ECF p. 4); *Longcrier v. HL-A Co.*, 595 F.

---

putative class are not prohibited 'where a party has not engaged in misleading, coercive, or otherwise abusive communications.'" *Id.*

Supp. 2d 1218, 1225 (S.D. Ala. 2008). The court ultimately struck the declarations and sanctioned defense counsel for its misleading conduct in representing that the declarations were being collected as part of a survey. *Id.* However, notwithstanding this obviously inappropriate conduct by the defendants, the court noted that "[a]s a general matter, employers are free to communicate with unrepresented prospective class members about the lawsuit and even to solicit affidavits from them concerning the subject matter of the suit." *Id.* at 1226.

Fontenot also offers *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 171 (1989) in support of its position. *See* (Filing No. 35 at ECF p. 2). However, Fontenot has "yet to move for conditional certification, and the Court in *Hoffman–La Roche* 'did not reach the issue of the district court's authority to manage pre-notice solicitations of potential claimants.'" *See Katz v. DNC Servs. Corp.*, 275 F. Supp. 3d 579, 579 (E.D. Pa. 2017).

From the foregoing, any authority cited by Fontenot in its Reply Brief should be afforded little, if any, weight. McNeil requested the opportunity to submit this sur-reply brief to alert the Court that the legal authorities Fontenot was attempting to use to bolster allegations against McNeil and its attorneys, and the manner in which Fontenot was attempting to use and describe them, warranted a closer examination than they had been given by Fontenot. *See* (Filing No. 37). Beyond Fontenot's presentation of the case law, McNeil felt compelled to request the ability to address Fontenot's spurious allegations against McNeil and its counsel.

### B. McNeil Personnel's Communications Did Not Mislead or Deter

Despite Fontenot's inflammatory rhetoric in the Reply Brief, McNeil fully complied with what courts have found permissible at the pre-certification stage in a collective action. Eduardo Barajas ("Barajas"), by himself, met with each welder separately, and ensured that the welders understood the claims alleged by Fontenot in his Complaint, why Barajas was speaking with

10

them, that they were free to join Fontenot's lawsuit, and that any decision they make to join or not join the lawsuit would have no impact on their contract or any other dealings with McNeil. *See* (Barajas Dec., ¶¶ 4-5). Fontenot's speculation and supposition to the contrary does not supplant or disprove what Barajas actually did in this case.

The communications of Barajas with the independent contractor welders did not mischaracterize the action, threaten retaliation, or otherwise undermine any court-approved notice. *See* (*Id.*, ¶¶ 4-5); *See also Talamantes v. PPG Indus., Inc.*, No. 13-CV-04062-WHO, 2014 WL 4145405, at *3-5 (N.D. Cal. Aug. 21, 2014) (finding even after stipulated conditional certification and court-approved notice had occurred, an email from the defendant to the putative class in a 216(b) action permissible because "it did not condition continued employment on not joining the action" and "the content of the email itself [did] not warrant corrective action[,]" especially when the plaintiff's "conclusory assertions [did] not counterbalance the fact that the email does not, on its face, undermine the Court's notice."); *Kerce v. West Telemarketing Corp.*, 575 F.Supp.2d 1354, 1366 (S.D. Ga. 2008) (refusing to strike declarations or restrict communications because "there is nothing improper about [the defendant] gathering facts to support its defense" and the plaintiff failed to offer "clear record evidence of abusive communications."); *Fengler v. Crouse Health Sys., Inc.*, 634 F. Supp. 2d 257, 261 (N.D.N.Y. 2009) (finding that in collective action cases, "the court cannot restrict communications "without a specific record showing by the moving party of the particular abuses by which it is threatened."); *Parks v. Eastwood Ins. Servs., Inc.*, 235 F. Supp. 2d 1082, 1085 (C.D. Cal. 2002) (concluding "there is no prohibition against pre-"opt-in" communication with a § 216(b) potential plaintiff, unless the communication undermines or contradicts the Court's notice."); *Mak v. Oska Japanese Rest., Inc.*, No. CV H-12-3409, 2013 WL 12155015, at *2 (S.D. Tex.

11

Sept. 16, 2013) (When a § 216(b) has not yet been certified as a collective action, "communications with potential class members are generally not prohibited . . . . Allegations that pre-certification communications are misleading, confusing or coercive, will not warrant any relief unless there is a 'clear record and specific findings that reflect a weighing of the need for a limitation.'").

Here, Fontenot's unsupported accusations regarding improper communications are just that, and do not warrant any relief, especially in light of the fact that Barajas took steps to ensure that no coercive communications occurred. *See* (Barajas Dec., ¶ 4-5). As such, Fontenot's request on page 5 of the Reply Brief for a five-pronged Order from the Court providing a variety of relief suffers from both a substantive defect (it lacks any substance), and a procedural defect because Fontenot filed no actual motion seeking any of the relief requested on page 5 of its Reply Brief. *See* (Filing No. 35 at ECF p. 5); *But See* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion"). The local rules confirm that a party who does not follow the Court's rules with respect to motion practice may be denied their requested relief "in whole or in part." *See* NECivR 7.1.[6]

### C. McNeil's Personnel Did not Have Communications That Violated the Rules of Professional Conduct, and Its Attorneys Had No Communications with Any Potential Members of Any Potential Class

The gist of Fontenot's argument in Part B of its Reply Brief is that McNeil and McNeil's counsel somehow acted improperly because they "knew these workers are putatively adverse to

---

[6] Previously, when Fontenot's Texas counsel failed to provide a court any evidence that improper communications had occurred with potential class members, counsel brought the issue before the Court by filing a motion styled "Plaintiff's Emergency Motion for Protective Order Prohibiting Ex Parte Communications with Plaintiffs and Class Members." *See Cooper v. Coil Chem, LLC*, No. CIV-16-473-D, 2017 WL 1483550 (W.D. Okla. Apr. 25, 2017). In *Cooper*, the court denied the motion, finding that, "[O]n the present record, the Court finds Plaintiff has failed to demonstrate that Defendant's communications with the putative class members were misleading or coercive." *Id*. at *4.

McNeil and are individuals Fontenot and his counsel seek to represent." (Filing No. 35 at ECF p. 2). Fontenot's arguments are detached from both the facts of this case and the law in FLSA collective actions.

Throughout the Reply Brief, Fontenot assumes and asserts that McNeil's counsel "communicated" with potential class members, "met with" potential class members, "were present" during interviews with potential class members, and "obtained" declarations from potential class members. *See* (Filing No. 35 at ECF pp. 1-5). Contrary to Fontenot's conjecture, McNeil's counsel have not communicated with, met with, or conversed with any individual who could be considered a potential class member of any potential class. *See* (Hershiser Dec., ¶¶ 3-7; Yudelson Dec., ¶¶ 3-7; Burkman Dec., ¶¶ 3-7; Stokes Dec., ¶¶ 3-7). Also, McNeil's counsel was not present at any interviews or meetings with any individual who could be considered a potential class member of any potential class. *See* (*Id.*). *See also Javine v. San Luis Ambulance Serv., Inc.*, No. CV13-07480, 2014 WL 12496988, at *6 (C.D. Cal. Dec. 12, 2014) (considering as a factor in the analysis that "Defendant's counsel was not involved in any of the communications at issue[,]" and finding that, based on the record in a Rule 23 class action, there was "no reason to limit either party's communications with potential class members.").

Fontenot's Reply Brief also displays Fontenot's misunderstanding of the fact that "[p]otential class members in a FLSA action are not considered parties to the action until they opt in." *See Talamantes v. PPG Indus., Inc.*, No. 13-CV-04062-WHO, 2014 WL 4145405, at *6 (N.D. Cal. Aug. 21, 2014). *See also Parks v. Eastwood Ins. Servs., Inc.*, 235 F. Supp. 2d 1082, 1083, 1085 (C.D. Cal. 2002) (stating "[u]ntil they "opt-in," prospective § 216(b) plaintiffs are not yet parties to the action . . . ." and finding that "there is no prohibition against pre-"opt-in"

13

communication with a § 216(b) potential plaintiff, unless the communication undermines or contradicts the Court's notice.").

Just because Fontenot "seek[s] to represent" the independent contractor welders does not afford the welders protection as parties represented by counsel. *See* (Filing No. 35 at ECF p. 2); *Talamantes*, 2014 WL 4145405, at *6 (rejecting the argument that potential class members in an FLSA action "should be afforded protection as parties implicitly represented by counsel" and noting that the inquiry is "whether defense communication was misleading, deceptive, or discouraged participation in the class; not whether it was done without the authority of plaintiffs' counsel."). *Parks*, 235 F. Supp. 2d at 1083 (stating that until an individual opts-in, "they have no attorney, and no attorney-client relation is yet in issue.").

Additionally, Fontenot argues that "[t]he law required McNeil (and/or its attorneys) … to obtain a waiver of or consent to any conflict of interest," from the independent contractor welders prior to obtaining declarations from them. *See* (Filing No. 35 at ECF pp. 3-4). In support of this argument, Fontenot cites *Richardson v. Interstate Hotels & Resorts, Inc.*, No. C 16-06772 WHA, 2018 WL 1258192, at *7 (N.D. Cal. Mar. 12, 2018). As already discussed, McNeil's counsel did not interact with any of the putative plaintiffs in this situation. (Hershiser Dec., ¶¶ 3-7; Yudelson Dec., ¶¶ 3-7; Burkman Dec., ¶¶ 3-7; Stokes Dec., ¶¶ 3-7). Nonetheless, *Richardson* does not "require[] McNeil (and/or its attorneys)"" to obtain any "consent to any conflict of interest" in this case because in *Richardson* the court only took issue with defense counsel's lack of a conflict waiver when he "represent[ed] the declarants at their depositions without obtaining informed written consent beforehand." *See id.*; (Filing No. 35 at ECF p. 4).

## CONCLUSION

Therefore, based on this Sur-Reply Brief and McNeil Industrial, Inc.'s ("McNeil") Brief in Opposition to Plaintiff's Expedited Motion for Conditional Certification and Notice to

14

Putative Class Members (the "Motion"), including the declarations submitted as evidence, McNeil respectfully requests that the Court deny Plaintiff's requested relief in Plaintiff's Reply Brief and deny Plaintiff's Motion.

Dated this 27th day of April, 2018.

MCNEIL INDUSTRIAL, INC. Defendant

By: *s/ David A. Yudelson*
Margaret C. Hershiser, #19545
David A. Yudelson, #23257
Nathan T. Burkman, #25210
Alyssa M. Stokes, #26400
KOLEY JESSEN P.C., L.L.O.
One Pacific Place, Suite 800
1125 South 103rd Street
Omaha, NE 68124-1079
(402) 390-9500
(402) 390-9005 (facsimile)
Margaret.Hershiser@koleyjessen.com
David.Yudelson@koleyjessen.com
Nathan.Burkman@koleyjessen.com
Alyssa.Stokes@koleyjessen.com

*Attorneys for Defendant McNeil Industrial, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 27, 2018, I electronically filed the foregoing Brief in Sur-Reply to Plaintiff's Expedited Motion for Conditional Certification and Notice to Putative Class Members with the Clerk of the Court which was delivered to all counsel of record via the Court's CM/ECF system.

*s/ David A. Yudelson*