## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MATTHEW FONTENOT, Individually and on Behalf of All Others Similarly Situated<br><br>Plaintiff(s),<br><br>v.<br><br>MCNEIL INDUSTRIAL, INC.<br><br>Defendant. | **Case No. 4:17-cv-03113**<br><br><br>**Joint Motion for FLSA Settlement Approval and Dismissal of Lawsuit** |

## JOINT MOTION FOR FLSA SETTLEMENT APPROVAL
## AND DISMISSAL OF LAWSUIT

Plaintiff Matthew Fontenot (Fontenot), individually and on behalf of the Opt-in Plaintiffs (collectively, Plaintiffs) and Defendant McNeil Industrial, Inc. (McNeil), are pleased to announce they have reached a settlement with respect to this Fair Labor Standards Act (FLSA) case. This settlement represents the culmination of two-year's worth of investigation, hotly-contested litigation, and arm's-length negotiation between informed and experienced counsel. If approved, the settlement will provide meaningful relief to the covered workers.

The Parties' proposed settlement is detailed in the attached Settlement and Release Agreement (Settlement Agreement), attached as Exhibit 1, for review and approval *in camera*. The Parties jointly request the Court approve the Settlement Agreement as a reasonable compromise of a *bona fide* dispute in accordance with *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982) (describing the standard for judicial approval of FLSA settlements where the parties are represented by counsel) (*citing Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945)).

The Settlement Agreement was the result of arm's-length negotiations, conducted by experienced counsel for all parties, after formally and informally exchanging information over the

course of multiple months. The terms of the Settlement Agreement are reasonable, appropriate, and fair compromise to all parties and individuals involved. *See Evans v. Jeff D.*, 475 U.S. 717, 726-27 (1986) (explaining that in deciding whether the proposed settlement reflects a "reasonable compromise," the Court may either accept or reject it but cannot require the parties to accept any revisions or modifications to the agreement.).

1.      **Relevant Background.**

This FLSA collective action was filed on August 24, 2017. *See* ECF No. 1. Fontenot alleged McNeil misclassified its welders as independent contractors and failed to pay them overtime as required by the FLSA. *Id.* Instead, during the period covered by the case, McNeil paid these workers the same hourly rate for all hours worked, including for those hours worked in excess of 40 hours in a single work week. *Id.*

Plaintiff filed a motion for conditional certification and to facilitate notice pursuant to 29 U.S.C. 216(b) on March 16, 2018. *See* ECF No. 24. McNeil fiercely resisted the motion for conditional certification and notice to the potential collective. *See* ECF Nos. 33, 40, 54, 57-59, 69. The Court ultimately granted conditional certification over McNeil's objection. *See* ECF Nos. 47, 70. By the completion of the notice process, a total of 10 individuals (including the named plaintiff) elected to participate in this matter. ECF Nos. 20, 80-84.

Through the life of this collective action, the Parties conducted formal and informal discovery, investigated the supporting facts, and thoroughly studied the legal principles applicable to the claims and defenses asserted in this collective action. Plaintiffs' counsel interviewed all Plaintiffs to understand their hours worked, the job duties performed, and the Parties' claims and defenses. The Parties exchanged formal written discovery relating to all Plaintiffs and exchanged hundreds of documents consisting primarily of personnel records, payroll records, and policies and procedures. Through the information and records exchanged, the Parties were able to identify the precise days

Plaintiffs worked for McNeil during the relevant time period and the amounts McNeil paid Plaintiffs to enable them to formulate an accurate damage model.

The Parties entered into informal, good-faith settlement negotiations beginning in April 2019. After months of back-and-forth negotiations, the Parties agreed to a settlement in principle in July 2019. After the Parties reached an agreement to settle, the Parties engaged in extensive negotiations concerning the specific terms of the Agreement, the notice program, and the scope of the release. The settlement documents ultimately approved and executed by the Parties are the result of very comprehensive discussions, as well as exhaustive and hard-fought negotiations, and are nothing about the settlement is the result of fraud or collusion.

Based upon the Parties' investigation, legal evaluation, and considering the contested legal and factual issues involved, including counsel's assessment of the uncertainties of litigation and the relative benefits conferred upon the Plaintiffs pursuant to this Settlement Agreement, the Parties concluded that the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Parties and they now seek Court approval of the same.

## 2.    The Settlement.

The proposed settlement obligates McNeil to pay up to a maximum settlement amount of $100,000 (Gross Settlement Amount) to resolve the claims of Fontenot and the Opt-in Plaintiffs. If approved, all claims, including claims for attorneys' fees ($40,000), costs (not to exceed $1,582.75), and enhancement payments for Fontenot and Opt-in Plaintiff Zach Peterson ($5,000 each) will be deducted from the Gross Settlement Amount (resulting in a Net Settlement Amount of $48,417.25). Because the settlement follows the opt-in structure of the FLSA, only Fontenot and those Opt-in Plaintiffs who timely executed a consent to join this Lawsuit will be eligible to receive a settlement payment. 29 U.S.C. § 216(b) (only workers who consent in writing are part of an FLSA collective action).

If approved, the balance of the Net Settlement Amount will be apportioned among Fontenot and the Opt-in Plaintiffs who elected to participate in the Lawsuit. Fontenot and the Opt-in Plaintiffs will receive their actual pro-rata share of the money they are allegedly owed based on corrected regular rate calculations incorporating any allegedly unpaid overtime for the weeks in which they worked over 40 hours. The pro rata shares of Fontenot and the Opt-in Plaintiffs will not be reduced based on the number of claims filed.

To calculate Fontenot and the Opt-in Plaintiffs' apportioned share of the Net Settlement Amount, the Parties used time and pay records provided by McNeil of the actual compensation they received and the days and hours they worked during the relevant period to determine the overtime allegedly owed. This means Fontenot and the Opt-in Plaintiffs will receive a settlement payment from the Net Settlement Amount which accurately reflects the compensation they are owed for those time periods in which overtime was worked, considering the substantial risks inherent in this collective action wage-and-hour case and continued litigation and the defenses asserted by McNeil.

As set forth in detail in the attached Settlement Agreement, the Parties reached a settlement on behalf of Fontenot and the Opt-in Plaintiffs. The Settlement provides each worker a substantial amount of their estimated unpaid overtime with McNeil. The default statute of limitations for FLSA violations is two years. *See* 29 U.S.C. § 255(a). Most of the total damages alleged to be owed to Plaintiffs (as calculated by both Parties) occurred in the third-year for which Plaintiffs bear the burden of showing a willful violation of the FLSA. Even net of attorney's fees and costs and any service awards, Fontenot and the Opt-in Plaintiffs will receive pro rata settlement awards from a Net Settlement Amount totaling over 90% of the two-year back wages allegedly owed under the FLSA's ordinary statute of limitations.

3.    **The Settlement Represents a Reasonable Compromise of this Litigation.**

Court approval is generally required to settle private FLSA actions between employers and employees. *Brask v. Heartland Auto. Servs., Inc.*, 2006 WL 2524212, at *1 (D. Minn. Aug. 15, 2006) (citing *Lynn's Food Stores, Inc.*, 679 F.2d at 1353). Courts within the Eighth Circuit have noted their preference for the voluntary resolution of litigation through settlement, as well as the strong public policy in favor of settlement agreements, stating that courts should approach such agreements with a presumption in their favor. *See Petrovic v. Amoco Oil Co.*, 200 f.3d 1140, 1148 (8th Cir. 1999); *White v. NFL*, 822 F.Supp. 1389, 1417 (D. Minn. 1993). In determining whether to approve an FLSA settlement, the court's "single obligation [is] to ensure that [the] settlement is fair." *McInnis v. Ecolab Inc.*, 2012 WL 892187, at *2 (D. Minn. Feb. 17, 2012). The Court "may only approve an FLSA settlement agreement after determining that the litigation involves a *bona fide* dispute and that the proposed settlement is fair and equitable to all parties." *Netzel v. W. Shore Grp., Inc.*, 2017 WL 1906955, at *4 (D. Minn. May 8, 2017).

i.    ***Bona Fide* Dispute Existed.**

Congress recognized that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part that endangered national health and efficiency and, as a result, the free movement of goods in interstate commerce. *See Brooklyn Sav. Bank,* 324 U.S. at 706-07.[1] Due to this unequal bargaining power, courts must ensure that a settlement agreement, following an FLSA claim, must be the product of a *bone fide* dispute.

A settlement resolves a *bona fide* dispute "if it reflects a reasonable compromise over issues actually in dispute..." *Netzel*, 2017 WL 1906955, at *5 (citing *King v. Raineri Const., LLC*, 2015 WL

---

[1] The Court therein noted either a district court or Department of Labor must approve an FLSA settlement and explained the low standard for judicial review when the parties are represented by counsel. *See also Evans*, 475 U.S. at 726-27.

631253, at *2 (E.D. Mo. Feb. 12, 2015)). "The threshold for establishing whether a bona fide dispute exists between the parties is a low one met where the parties are in disagreement about the wages to be paid and liability of the issues." *Id.* At *4 (citing *Grabovic v. Ben's Richardson Pizza*, 2016 WL 1170977, at *2 (E.D. Mo. Mar. 25, 2016)).

The Parties' Agreement represents a fair compromise of a *bona fide* dispute concerning the legality of McNeil's classification and compensation practices with respect to the Plaintiffs. The Parties contested the claims and defenses asserted. In this case, McNeil classified Plaintiffs as independent contractors and paid them the same hourly rate for all hours worked with no overtime compensation. Plaintiffs allege that because of their job duties and the economic realities of their working relationship with McNeil they should have been classified as employees and paid overtime compensation when they worked over 40 hours in a week. McNeil denied it violated the FLSA and contends it properly paid and classified Plaintiffs as independent contractors.

The Parties further disagreed on whether Plaintiffs could satisfy their burden to demonstrate that McNeil acted willfully, which in turn affects whether Plaintiffs could recover compensation for two (2) years or three (3) years. *See* 29 U.S.C. § 255. Plaintiffs also contended McNeil would not be able to meet its burden to prove that it acted in good faith, which would implicate the amount, if any of liquidated damages. *See* 29 U.S.C. § 260. McNeil maintained it always acted in good faith, and damages (if any) should be unliquidated and be recovered only for a two (2) year period.

There is no question the Settlement Agreement before the Court is the result of a *bona fide* and contested dispute where serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt. *See Netzel*, 2017 WL 1906955, at *4 (finding that a *bona fide* dispute existed between the parties where, as here, defendant denied it violated the FLSA or that it owed plaintiffs any wages or damages).

**ii.      The Settlement is Fair and Equitable to All Parties.**

Once the Court establishes that the settlement resolves a *bona fide* dispute, it must consider if the settlement is fair and equitable to all parties. In evaluating whether FLSA settlement terms are fair and equitable to all parties, courts consider relevant factors such as: (1) the stage of the litigation and the amount of discovery exchanged; (2) the experience of counsel; (3) the probability of the plaintiffs' success on the merits; (4) any overreaching by the employer in the settlement negotiations; and (5) whether the settlement is the product of arm's-length negotiations between represented parties based on the merits of the case. *Id.* (citing *King*, 2015 WL 631253, at *2).

**a.   The Stage of the Proceedings.**

"The essential consideration regarding the stage of the litigation is whether the parties have exchanged sufficient information to evaluate their claims and to allow the parties to engage in meaningful settlement discussions—this requires no formal discovery." *Id.* At *5.

At this stage, extensive formal and informal discovery has taken place, including the exchange of written discovery, data, documents, and certain personnel information. This exchange of information allowed the Parties to determine Plaintiffs' purported losses resulting from McNeil's alleged wage and hour violations. Additional discovery in this regard would not likely change the outcome of the Parties' Settlement Agreement as it relates to damages. The fact that the parties engaged in formal discovery and exchanged information to assess their claims and calculate damages for each individual supports that the settlement agreement is fair and equitable. *Id.* (exchanging information necessary to calculate damages supports a determination that the settlement agreement is fair and equitable).

The Parties also held numerous settlement discussions wherein they provided each other with an analysis of the legal issues. The Parties were well-informed throughout their negotiations, which ultimately allowed them to resolve the case.

### b. The Experience of Counsel.

Courts in the Eighth Circuit recognize the importance of competent representation when determining the reasonableness of a settlement. *See, e.g., Sanderson v. Unilever Supply Chain, Inc.*, 2011 WL 639395, at *2 (W.D. Mo. Dec. 19, 2011); *Zilhaver v. UnitedHealth Grp., Inc.*, 646 F.Supp.2d 1075, 1083 (D. Minn. 2009); *In re Xcel Energy, Inc.*, 364 F.Supp.2d 980, 995-96 (D. Minn. 2005).

Experienced Counsel for both Parties believes the Settlement Agreement is fair and reasonable. The Parties' Settlement Agreement is a result of arm's-length negotiations by attorneys who have been vigorously prosecuting and/or defending this and similar claims for many years. Both sides have considerable experience in prosecuting, defending, and settling federal and state wage and hour claims previously, and, in this case, were particularly well informed as to the facts and circumstances of the litigation

### c. The Probability of Plaintiffs' Success on the Merits.

Prior to reaching a settlement, Plaintiffs' Counsel carefully assessed the probability of ultimate success on the merits and the risks of establishing liability and damages. While Plaintiffs certainly believe their claims relating to the classification and pay practice at issue are strong and can be proven at trial, a finding of liability is never assured, especially in complex, wage-and-hour litigation. Even with a strong factual and legal case, Plaintiffs face significant risks in establishing liability and damages.

For one, there were legal and factual obstacles concerning their status as employees versus independent contractors under the "economic realities" factors utilized when analyzing the classification of workers under the FLSA. The discovery exchanged between the Parties indicated there were likely fact issues which would preclude summary judgment on the disputed employee-status. Additionally, Plaintiffs had the burden of establishing that McNeil's actions were willful for the application of a three (3) year, rather than two (2) year statute of limitations. Similarly, McNeil maintained its conduct was in good faith and that liquidated damages were not appropriate. By

resolving their claims now, Plaintiffs avoided the considerable delay that extended litigation and potential appeals would have caused while still receiving a majority of their allegedly owed overtime wages. In total, this factor supports a determination that the Settlement Agreement is fair and equitable.

### d.  Any Overreaching by the Employer in the Settlement Negotiations.

Although both Parties continue to believe in the merits of their respective claims and defenses, considering the time and expense associated with continuing this matter, and the uncertainty of dispositive motion practice and trial, the Parties agree that a compromise is appropriate. They desire to resolve this case by way of a negotiated settlement payment by McNeil in exchange for release of claims by Plaintiffs to avoid the time and expense inherent in continued litigation. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 ("Thus, when the parties [to litigation] submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching."); *see also Netzel*, 2017 WL 1906955 at *6 (approving settlement agreement where there was "no indication in the record that there was any overreaching of any kind by Defendant"). Here, there is nothing to indicate overreaching of any kind by McNeil. Therefore, this factor weighs in favor of approval.

### e.  Whether the Settlement Resulted from Arm's Length Negotiations.

"In cases where all parties are represented by counsel during the litigation and during the settlement discussion, Courts have almost unilaterally found that the settlement was the product of arm's length negotiations." *Netzel*, 2017 WL 1906955 at *6. Accordingly, the Court should find that the settlement is the product of an arm's-length negotiation between the parties.

### 4.    Service Payments Should Be Awarded.

In addition to each Plaintiff's pro rata settlement allocations, the Parties have agreed to a service payment to Plaintiff Fontenot and Opt-in Plaintiff Zach Peterson in the amount of $5,000. These

payments are in recognition of the time and effort provided in bringing this case, participation in discovery and motion practice, and their involvement in securing a resolution of this matter for a large group of workers. Courts routinely approve service payments if they are fair and reasonable. *See, e.g., Wineland v. Casey's Gen. Stores, Inc.*, 267 F.R.D. 669, 677-78 (S.D. Iowa 2009) (approving $10,000 service awards to two named plaintiffs because such payments were fair and reasonable under the circumstances); *Stembridge v. Skyhop Global, et al.*, Case No. 14-cv-3084-PJS-TNL (ECF No. 132) (D. Minn.) (approving $5,000 service award). The Court should similarly approve these service payments.

**5.     Plaintiffs' Requested Attorneys' Fees and Costs Should be Approved.**

The FLSA, provides that "[t]he court...shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). "When the parties negotiate the reasonable fee amount separately and without regard to the plaintiff's FLSA claim, the amount the employer pays to the employees' counsel has no bearing on whether the employer has adequately paid its employees in a settlement." *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019). In this case, the Parties negotiated a reasonable attorneys' fee amount separate and without regard to the Plaintiffs' FLSA claims and they should thus be approved.

**6.     Conclusion.**

The Parties and their counsel (all of whom are represented by experienced wage-and-hour attorneys with years of experience in litigating and resolving disputes such as this) find the Settlement Agreement to be a reasonable compromise of the claims alleged by Plaintiffs considering the procedural posture of the case, the litigations risks, and the costs applicable to both sides. The Parties have engaged in arm's-length settlement negotiations involving months of informal settlement discussions and negotiations. Because the Settlement Agreement is a reasonable compromise and

adequately compensates the participants for all the unpaid overtime hours alleged, the Parties seek approval of their proposed Settlement Agreement.

Respectfully Submitted,

By: */s/ Lindsay R. Itkin*
    **Michael A. Josephson**
    Texas State Bar No. 24014780
    **Lindsay R. Itkin**
    Texas State Bar No. 24068647
    *Admitted Pro Hac Vice*
    **JOSEPHSON DUNLAP, LLP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77046
    Tel: (713) 352-1100
    Fax: (713) 352-3300
    mjosephson@mybackwages.com
    litkin@ mybackwages.com

    **AND**

    **Richard J. (Rex) Burch**
    Texas State Bar No. 24001807
    **BRUCKNER BURCH, P.L.L.C.**
    8 Greenway Plaza, Suite 1500
    Houston, Texas 77046
    Tel: (713) 877-8788
    Fax: (713)877-8065
    rburch@brucknerburch.com

    **AND**

    **Brian E. Jorde**
    Nebraska State Bar No. 23613
    **DOMINALAW GROUP PC LLO**
    2425 South 144th Street
    Omaha, Nebraska 68144
    Tel: (402) 493-4100
    Fax: (402) 493-9782
    bjorde@dominalaw.com

    **ATTORNEYS IN CHARGE FOR PLAINTIFFS**

By: */s/ Margaret Hershiser*
Margaret Hershiser
KOLEY JESSEN P.C., L.L.O.
1125 South 103rd Street, Suite 800
Omaha, NE 68124-1079
Phone (402) 390-9500
Fax (402) 390-9005
Margaret.Hershiser@koleyjessen.com

**ATTORNEY FOR DEFENDANT**

**<u>CERTIFICATE OF SERVICE</u>**

I served this document via the Court's ECF System in accordance with the Federal Rules of Civil Procedure.

*/s/ Lindsay R. Itkin*
**Lindsay R. Itkin**